UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Jamaul K. Aziz

_____

_____
                 Plaintiff,

[Insert full name of plaintiff/prisoner]

-against-

Federal Bureau of Prisons
C.O. Genna
C.O. Castro
C.O. Garcia (SHU)
Warden Maldonado

_____
                 Defendant(s).

[Insert full name(s) of defendant(s). If you need additional
space, please write "see attached" and insert a separate
page with the full names of the additional defendants. The
names listed above must be identical to those listed in Part I]

25-5796

**CIVIL RIGHTS COMPLAINT**
42 U.S.C. § 1983

JURY DEMAND

YES ✓      NO _____

RECEIVED
OCT 1 4 2025
PRO SE OFFICE

I.     **Parties:** (In item A below, place your name in the first blank and provide your present
       address and telephone number. Do the same for additional plaintiffs, if any.)

       A.   Name of plaintiff  Jamaul K. Aziz

       If you are incarcerated, provide the name of the facility and address:

       MDC Brooklyn
       80 29th Street
       Brooklyn, NY 11232

       Prisoner ID Number: 24716-509

1

If you are not incarcerated, provide your current address:

_____

_____

_____

Telephone Number: _____

**B. List all defendants.** You must provide the full names of each defendant and the addresses at which each defendant may be served. The defendants listed here must match the defendants named in the caption on page 1.

Defendant No. 1        Federal Bureau of Prisons
                       Full Name
                       Entity
                       Job Title

                       _____

                       _____
                       Address

Defendant No. 2        C.O. Genna
                       Full Name
                       Corrections Officer
                       Job Title
                       80 29th Street
                       Brooklyn NY 11232
                       Address

Defendant No. 3        C.O. Castro
                       Full Name
                       Corrections Officer
                       Job Title
                       80 29th Street

2

Brooklyn, NY 11232
Address

Defendant No. 4  C.O. Garcia (SHU)
Full Name
Corrections Officer
Job Title
80 29th Street
Brooklyn, NY 11232
Address

Defendant No. 5  Warden Maldonado
Full Name
Warden
Job Title
80 29th Street
Brooklyn, NY 11232
Address

## II.    Statement of Claim:

(State briefly and concisely, the facts of your case. Include the date(s) of the event(s) alleged as well as the location where the events occurred. Include the names of each defendant and state how each person named was involved in the event you are claiming violated your rights. You need not give any legal arguments or cite to cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. You may use additional 8 ½ by 11 sheets of paper as necessary.)

Where did the events giving rise to your claim(s) occur? MDC Brooklyn 80 29th Street, Brooklyn, NY 11232

When did the events happen? (include approximate time and date) Between 7-18-22 to present

3

Facts: (what happened?) _____

_____

_____

_____

_____ - Attached on rear - _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**II.A.   Injuries.**      If you are claiming injuries as a result of the events you are complaining about, describe your injuries and state what medical treatment you required.  Was medical treatment received?

Nerve damage to elbow, PTSD, Chronic Depression, suicidal ideation. Plaintiff recieved a tetanus shot and does not recieve adequate mental health treatment

_____

The Plaintiff is a 45 year old male, currently incarcerated as a pretrial detainee in MDC Brooklyn, located at 80 29th Street, Brooklyn NY 11232.

The Plaintiff has been an inmate in this facility since 7-18-22.

Since the time of his arrival, the Plaintiff has suffered and still suffers from an abundance of examples of deteriorated conditions within MDC Brooklyn. These conditions are well documented in District Court reports and continue to violate the constitutional rights of those detained within, including the Plaintiff.

The Plaintiff has on various occassions and in each instance attempted to resolve his issues through use of the Administrative Remedy Procedure, as required by the "Prison Litigation Reform Act" enacted by Congress, to no avail, which is a Constitutional violations within itself. The plaintiff submits in-house grievance forms, he is given a copy and he recieves no response.

Some of the continuous inhumane conditions of confinement include but are not limited to, non-edible food, medical negligence, sexual assault and/or harrassment, and retaliation, etc.

The Plaintiff has sustained physical injury and continues to suffer from psychological injury, which is documented and included hereinafter. (see exhibits)

The Plaintiff also risks enduring further irreparable harm if injunctive relief is not granted.

The following paragraphs are the claims and details that constitute violations against the Plaintiff's rights.

1. Warden Maldonado was employed as the Institutional Warden at all times material, in relevance to this complaint, and he was responsible for enforcing Federal Bureau of Prisons policy and

implementing customs, and institutional supplements within the facility as deemed necessary.

2. The Federal Bureau of Prison assumes responsibility for creating these policies.

3. By policy, all meals must meet specified requirements outlined by a certified nutritionalist. Since being in MDC Brooklyn, the Plaintiff has been forced to consume food that was outdated, unproperly prepared, and/or lacked the required daily calorie intake. The Plaintiff is also diabetic and many meals have spiked his A1C level, increased his blood pressure and infected his white blood cells. He has also suffered from stomach viruses, and fluctuating weight and continues to suffer.

4. On July 17, 2024 while housed in general population housing unit GB-43, that should be protected and monitored by Federal Bureau of Prisons officers and at the time was being supervised by C.O. Genna and video surveillance. The Plaintiff was forced to assert 3rd party self-defense on behalf of a fellow inmate who had been cut in the face by another inmate. Subsequently the aggressor suffered fatally in an attempt to continue attacking the initial victim. The inmate duress alarms were inoperable and the facility was operating openly with only 55% of its necessary staffing, creating a cesspool for violence. Between the time the aggressor cut the initial victim in the face, and the time the death occurred, officer Genna did not complete a proper security check. He also walked passed a pool of blood on the floor and, instead of utilizing protocol, proper judgement and/or training he ignored the blood and returned to the Unit office and turned on music. The Plaintiff suffered a puncture wound and is now charged with a homicide for defending the other inmate and himself although

evidence in the case is pointing toward charges being lessened due to the accurate self-defense element. The case is still active. Due to the events that took place on July 17, 2024 and officer Genna's negligence along with the unsafe conditions of confinement, the Plaintiff suffers from nerve damage and irreparable Psychological harm including PTSD and suicidal ideation.

5. Since the incident on July 17, 2024 the Plaintiff has been housed in isolation which is a dynamic risk factor to suicidal ideation and other mental health conditions. By policy, employees must ordinarily return inmates to general population or request a transfer of that inmate to a more suitable institution using EMS. A0409. Neither of which has been afforded to the Plaintiff. The Plaintiff did not have a disciplinary history prior to the incident on July 17, 2024. (see Exhibit A) The decision to keep the Plaintiff in isolation is solely Warden Maldonado's. This isolation violates the equal protection rights of the Plaintiff along with his Due Process rights and continues to deteriorate his mental stability.

6. While housed in part of the institution that serves as segregated housing, the Plaintiff attempted suicide and needed to be placed on suicide watch. (9-3-24) The Plaintiff was not resistent nor combative, yet excessive force was maliciously inflicted upon him by C.O. Garcia. The Plaintiff was thrown to the ground and jumped on by C.O. Garcia causing extreme pain to the lower extremities of the Plaintiff while he was in this vulnerable state of mind further reducing his mental health state and increasing his distrust for institution staff. By policy and law, only enough force to subdue an inmate is permitted to be used against an inmate at any time. No force was necessary as

the Plaintiff exhibited compliance for the entirety of this incident.

7. While housed in isolation the Plaintiff also became a victim of sexual assault and sexual harrassment. C.O. Castro who has been disciplined and removed from the isolation area, began this harassment by making sexually suggestive comments to the plaintiff asking him if he wanted him (castro) to touch his buttocks and genitals. C.O. castro then became more comfortable over time, actually touching the Plaintiffs genitals and buttocks inappropriately during pat searches also making the sexually suggestive comments as he did this. (see exhibit E) The Plaintiff utilized the proper channels to lodge a PREA complaint and was ultimately retaliated against for doing so. The Plaintiff continues to suffer from symptoms of PTSD due to this violation of his person by C.O. Castro.

8. The Federal Bureau of Prisons employed and trained Warden Maldonado, who implemented customs that allowed the Constitutional violations endured by the Plaintiff. Warden Maldonado also ignored or rejected the numerous complaints submitted by the Plaintiff, allowing the violations to continue, some of which to the present date.

The Plaintiff is asking for injunctive, punitive and nominal relief.

```
REGISTER NO: 24716-509 NAME..: AZIZ, JAMAUL KAREEM
FUNCTION...: PRT       FORMAT: CHRONO   LIMIT TO ___ MOS PRIOR TO 09-23-2025
```

---

```
REPORT NUMBER/STATUS.: 4176035 - SANCTIONED INCIDENT DATE/TIME: 09-03-2025 2056
UDC HEARING DATE/TIME: 09-05-2025 0740
FACL/UDC/CHAIRPERSON.: BRO/4 DETC M/W/GIEBFRIED
REPORT REMARKS.......: INMATE SANCTIONED TO DETER FUTURE BEHAVIOR
    306  REFUSING WORK/PGM ASSIGNMENT - FREQ: 1
         LP COMM     / 30 DAYS / CS
                     FROM: 09-05-2025  THRU: 10-04-2025
         COMP:  LAW:
```

---

```
REPORT NUMBER/STATUS.: 4005787 - SANCTIONED INCIDENT DATE/TIME: 10-04-2024 1014
DHO HEARING DATE/TIME: 10-23-2024 0845        DHO REPT DEL: 11-07-2024 1208
FACL/CHAIRPERSON.....: BRO/E. ROGERS
REPORT REMARKS.......: IM STATED "I WROTE DONES UP THE DAY BEFORE, THIS IS A
                       COUNTERATTACK". GUILTY ON WEIGHT OF EVIDENCE
    203  THREATENING BODILY HARM - FREQ: 1 ATI: SN1
         DIS GCT     / 27 DAYS / CS
         COMP:000 LAW:    SANCTION IMPOSED TO DETER FUTURE MISCONDUCT
         DS          / 20 DAYS / CS
                     FROM: 10-23-2024  THRU: 11-11-2024
         COMP:  LAW:     SANCTION IMPOSED TO DETER FUTURE MISCONDUCT
         LP COMM     / 120 DAYS / CS
                     FROM: 11-28-2024  THRU: 03-27-2025
         COMP:  LAW:     SANCTION IMPOSED TO DETER FUTURE MISCONDUCT
```

---

```
REPORT NUMBER/STATUS.: 3986210 - SANCTIONED INCIDENT DATE/TIME: 08-26-2024 1500
UDC HEARING DATE/TIME: 08-29-2024 1315
FACL/UDC/CHAIRPERSON.: BRO/4 DETC M/W/GIEBFRIED
REPORT REMARKS.......: INMATE SANCTIONED TO DETER FUTURE BEHAVIOR.
    306  REFUSING WORK/PGM ASSIGNMENT - FREQ: 1
         LP COMM     / 90 DAYS / CS
                     FROM: 08-30-2024  THRU: 11-27-2024
         COMP:  LAW:
```

---

```
REPORT NUMBER/STATUS.: 3882846 - SANCTIONED INCIDENT DATE/TIME: 01-18-2024 2145
DHO HEARING DATE/TIME: 02-09-2024 1004        DHO REPT DEL: 02-15-2024 1108
FACL/CHAIRPERSON.....: BRO/E. ROGERS
REPORT REMARKS.......: IM PROVIDED WRITTEN STATEMENT - UPLOADED TO DARTS
                       GUILTY ON WEIGHT OF EVIDENCE
    108  POSSESSING A HAZARDOUS TOOL - FREQ: 1 ATI: EYC RFP:
         DIS GCT     / 41 DAYS / CS
         COMP:000 LAW:    SANCTION IMPOSED TO DETER FUTURE MISCONDUCT
         DS          / 30 DAYS / CS
                     FROM: 02-09-2024  THRU: 03-09-2024
         COMP:  LAW:     SANCTION IMPOSED TO DETER FUTURE MISCONDUCT
```

```
G0002      MORE PAGES TO FOLLOW . . .
```

Exhibit A

REGISTER NO: 24716-509 NAME..: AZIZ, JAMAUL KAREEM
FUNCTION...: PRT          FORMAT: CHRONO     LIMIT TO ___ MOS PRIOR TO 09-23-2025

DHO HEARING DATE/TIME: 02-09-2024 1004 REPORT 3882846 CONTINUED
         LP VISIT   / 1 YEARS / CS
                    FROM: 02-09-2024  THRU: 02-08-2025
         COMP:     LAW:    SANCTION IMPOSED TO DETER FUTURE MISCONDUCT

G0005     TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

## Risk and Protective Factors Assessed

**This writer screened the inmate for a variety of empirically validated factors commonly associated with risk for self-harm and suicide.**

The following **STATIC** risk factors were assessed to be present and increase the inmate's risk for engaging in suicide related behaviors: Chronic Medical Condition, History of childhood abuse (physical or sexual)

The following **DYNAMIC** risk factors were assessed to be present and increase the inmate's risk for engaging in suicide related behaviors: Agitation, Current physical pain, Current suicidal ideation, Current suicidal intention, Current suicidal plan, Fear for own safety, Feeling hopeless/helpless, Non-compliance with treatment recommendations, Problem solving deficts, Social isolation

The following **PROTECTIVE** factors were assessed to be present and may decrease the inmate's risk of suicide:Religious beliefs against suicide, Supportive family relationships

Some risk and/or protective factors were not assessed, and their impact on this inmate's risk for suicide related behavior is undetermined; the reason they were not assessed is stated below.

Mr. Aziz is currently a CARE1-MH AIC that does not meet diagnostic criteria for a mental illness. A review of records indicated that he previously reported being the victim of childhood verbal abuse, physical abuse, and emotional abuse. He has no history of suicidal ideation, intent, or plan. He has been seen for one prior SRA while in BOP custody, but he denied suicidal ideation, intent, or plan, and placement on Suicide Watch was not clinically indicated. According to BEMR, he is currently diagnosed with diabetes, vitamin D deficiency, tinea unguium, tinea pedis, and tinea cruris, for which he is being treated medically. He denied having a history of violence, and SENTRY indicated he is currently charged with "drugs." Of note, Mr. Aziz has one incident report for possession of a hazardous tool. He is also currently pending investigation for an alleged homicide of another AIC at MDC-Brooklyn.

Mr. Aziz was seen for the current SRA after he wrote a suicide note and provided it to staff. The suicide note stated: "Please tell my kids I love them. I'm tired I can't take it no more they are torturing me down here!!! Everyday is something else. I'm tired of living. May God take my soul, the system failed me!!!!! MDC is inhumane. My life has been taking for granted. When I'm dead, just tell my family I meant well. Suicide is real. Bye." During the SRA, he presented as agitated regarding SHU staff, noting, "They are trying to kill me." He stated that he is in fear for his life in the East SHU. He also expressed frustration with his cellmate. He reported that he engaged in self-directed violence by ingesting the remaining pills from 3 of his prescribed medication bottles. He described being in physical pain in his stomach from taking the medications, and Health Services staff indicated that he should expect to have a stomach ache and diarrhea for a few days after he ingested his remaining Metformin pills. He was not able to state what initially triggered his suicidal ideation and engagement in self-directed violence this morning. Currently, he reported feeling suicidal with the intention to die if given the means to do so. He was observed to be hopeless and helpless throughout, and he was tearful for much of the contact. His behavior is reflective of problem- solving deficits, as well as non-compliance with prior treatment efforts. As this SRA was prompted by his current SHU placement, SHU placement is a dynamic risk factor. He is currently facing social isolation, as he is housed in the SHU and has been separated from his family and children.

Mr. Aziz has historically identified some protective factors. For example, he previously described having a supportive relationship with his family and seven children. He previously noted that he identifies with the Muslim faith. His faith remains currently important to him, as he immediately asked to have a Quran while on Suicide Watch. Currently, he described a willingness to engage in future mental health treatment as recommended.

Overall, Mr. Aziz reported suicidal ideation and engaged in self-directed violent behavior by ingesting the remaining pills from his three prescribed medication bottles this morning. He continued to endorse suicidal ideation, intention, and plan during the SRA. He presented with difficulty accessing healthy distress tolerance skills, as well as problem-solving deficits and poor communication techniques. At this time, he was unable to identify any reasons for living and continued to endorse current suicidality. Future interventions will aim to increase his adaptive problem-solving, effective communication, and distress tolerance skills. Based on the totality of this information, a formal Suicide Watch remains clinically indicated. Chief Psychologist consulted.

## Diagnosis

No Diagnosis, No Dx - Current

## Conclusions

**The Overall Acute Suicide Risk for this Inmate is:** Moderate
**Overall Chronic Suicide Risk for this Inmate is:** Absent

## Recommendations

1. Mr. Aziz provided East SHU staff with a suicide note earlier this morning indicating that he is "tired of living." The letter further stated, "Suicide is real. Bye." During the SRA, Mr. Aziz reflected that he also engaged in self-directed violence by ingesting the

Exhibit B

remaining pills from three of his prescribed medication bottles. Mr. Aziz presented as agitated regarding SHU staff, noting, "They are trying to kill me." He also expressed frustration with his cellmate. Mr. Aziz described being in physical pain in his stomach from taking the medications, and Health Services staff indicated that he should expect to have a stomach ache and diarrhea for a few days after he ingested his remaining Metformin pills. Mr. Aziz was not able to state what initially triggered his suicidal ideation and engagement in self-directed violence this morning. He was minimally engaged with psychological interventions at this time, noting his belief that staff are trying to harm him or make his cellmate harm him. He did not demonstrate the ability to access healthy coping mechanisms or significant protective factors at this time. Based on the totality of this information, a formal Suicide Watch is clinically indicated. Chief Psychologist consulted.

2. The Mental Health Care Level (MHCL) and Diagnostic and Care Level Formulation (DCLF) note of Mr. Aziz were reviewed. It was determined that his MHCL and DCLF are appropriate to the current setting and situation. As such, no changes were needed to either his MHCL or DCLF at this time, and he remains a CARE1-MH AIC. CARE1-MH is indicative of an AIC who shows no significant level of functional impairment associated with a mental illness and demonstrates no need for regular mental health intervention. As this is Mr. Aziz's second Suicide Risk Assessment within a few months, his MHCL will be re-assessed while he is on Suicide Watch to determine if an increase in such is appropriate. Mr. Aziz does not currently meet diagnostic criteria for a mental illness, and he is not prescribed psychotropic medication.

3. Lt. Amaro and SHU staff were notified of Watch beginning.

4. Suicide Watch will be conducted in the 8th Floor Suicide Watch area. He is authorized to have a suicide watch smock, blanket, mattress, and booties. He is not authorized any additional items at this time due to his current suicidal ideation, intention, and plan, as well as his recent engagement in self-directed violence.

5. Mr. Aziz will be seen by Psychology Services on at least a daily basis to provide treatment for suicidal ideation/self-directed violence, building effective communication skills, and building distress tolerance skills as he processes his interpersonal difficulties with others.

6. Mr. Aziz was educated about routine and emergency procedures for contacting Psychology staff. He was encouraged to reach out to Psychology staff should he experience any psychological distress. He will also have the opportunity to speak to a psychologist on a weekly basis while he remains housed in the SHU.

7. Health Services staff was contacted to evaluate Mr. Aziz based on his misuse of his prescribed medications. Pharmacy Services will be contacted to change Mr. Aziz's medications from Self-Carry to Pill Line.

**Suicide Watch:** A suicide watch is to be initiated immediately

Completed by Rosinski, Amanda PhD on 09/04/2024 13:11

**Reviewed by Schlessinger, K. PsyD, PhD/Chief Psychologist on 09/04/2024 13:26**

# Bureau of Prisons
## Psychology Services
## Clinical Intervention - Clinical Contact

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | AZIZ, JAMAUL KAREEM | | | Reg #: | 24716-509 |
| Date of Birth: | 04/11/1980 | Sex: M | Facility: BRO | Unit Team: | 4 DETC M/W |
| Date: | 02/21/2025 10:01 | Provider: | Steinhaus, G. PsyD | | |

## Focus of Session

Mr. AZIZ was seen cell-side for a CARE2-MH contact, as he declined to speak privately.

## Subjective/Objective Presentation

S: While meeting with Mr. AZIZ, he spoke about the numerous impacts his long-term Special Housing Unit (SHU) placement has had on him and that he has been unable to work toward his GED and be productive with his time. Mr. AZIZ was provided general information with regard to such, and advised this clinician will inform Education of his request. Additionally, Mr. AZIZ stated he has "PTSD" from the incident which resulted in his SHU placement; however, he then immediately calmly changed the topic to his perceived needs not being met and did not speak further about said "PTSD." Specifically, Mr. AZIZ reported concerns that his gums have been bleeding for seven to eight months, he is unaware of the new visitation regulations for SHU inmates as his sanction for such was just ended, and his telephone account has yet to be re-set for him to obtain two telephone calls per month as a long-term SHU inmate. Adaptive means of self-advocacy were explored with Mr. AZIZ, and he was advised this clinician will communicate his concerns to the respective departments. He otherwise denied having any concerns to discuss with this clinician at this time.

O: Mr. AZIZ was neatly dressed and appeared hygienic. He was oriented to person, place, time, and circumstances. His affect and mood were appropriate and congruent. His rate, rhythm, and tone of speech were normal, as was his eye contact. There was no evidence of hallucinations, delusions, or abnormal thought processes. No psychomotor agitation/retardation was noted. There was no mention of current suicidality.

A: There was no observable evidence Mr. AZIZ was in psychological distress during this contact. Although Mr. AZIZ stated he has "PTSD," he did not endorse or display symptoms of such during this contact. He evidenced adaptive help-seeking behavior during this contact, and was respectful throughout.

## Intervention(s)

Active and empathic listening were utilized to assess his mental status and maintain rapport. As previously mentioned, while meeting with Mr. AZIZ, he spoke about the numerous impacts his long-term Special Housing Unit (SHU) placement has had on him and that he has been unable to work toward his GED and be productive with his time. Mr. AZIZ was provided general information with regard to such, and advised this clinician will inform Education of his request. Additionally, Mr. AZIZ stated he has "PTSD" from the incident which resulted in his SHU placement; however, he then immediately calmly changed the topic to his perceived needs not being met and did not speak further about said "PTSD." Specifically, Mr. AZIZ reported concerns that his gums have been bleeding for seven to eight months, he is unaware of the new visitation regulations for SHU inmates as his sanction for such was just ended, and his telephone account has yet to be re-set for him to obtain two telephone calls per month as a long-term SHU inmate. Adaptive means of self-advocacy were explored with Mr. AZIZ, and he was advised this clinician will communicate his concerns to the respective departments. He otherwise denied having any concerns to discuss with this clinician at this time.

## Progress/Plan

P: Mr. AZIZ will continue to be seen monthly as a CARE2-MH inmate. Future contacts may continue to process and address the impacts of Mr. AZIZ's long-term SHU placement. Additionally, future contacts may address coping mechanisms to manage his current stressors.

Unit Team, Trust Fund, the SHU Lieutenant, Dental, Health Services, and Education were advised of Mr. AZIZ's respective reported concerns.

Completed by Steinhaus, G. PsyD on 02/24/2025 13:16

Exhibit C

# Bureau of Prisons
## Psychology Services
## SHU Review

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Inmate Name:** | AZIZ, JAMAUL KAREEM | | | | | **Reg #:** | 24716-509 |
| **Date of Birth:** | 04/11/1980 | **Sex:** | M | **Facility** BRO | | **Unit Team:** | 4 DETC M/W |
| **Date:** | 03/05/2025 11:55 | **Provider:** | Ibrahim, Salman PhD | | | | |

| | | | |
|---|---|---|---|
| **Placed In SHU:** | 01/25/2025 | **Type:** | SHU |
| **Status:** | ADMIN.DETENTION | **Threat to Self:** | Low |
| **Basis of Review:** | Inmate was interviewed | **Adjustment:** | Satisfactory, segregation not detrimental |
| **Mental Status:** | No significant mental health issues. | **Threat to Others:** | Low |

## Comments

Note: This SHU review is a brief evaluation of this inmate's current mental status in SHU. Although an inmate may exhibit adequate adjustment to his SHU confinement and a lack of acute distress at this current time, it does not preclude the fact he may suffer from a psychological disorder requiring additional psychological services. This SHU review is also not a risk assessment of an inmate's potential for violent behaviors. Rather, it is an assessment of whether the inmate exhibits any aggressive or violent behaviors at the time of the SHU review.

Subjective/Objective data: inmate displayed no evidence of depression or suicidality and appeared to be adequately adjusting to SHU placement. This adjustment was determined by clinical presentation, his self-report, and Unit personnel statements. He presented as stable during the current contact. He denied current suicidality. This inmate is classified as a CARE2-MH assignment and is seen at least monthly by Psychology Services.

Assessment/Plan: The inmate is currently psychologically stable. He is offered to participate in Turning Points programming during routine SHU rounds. He has been instructed to contact Psychology Department staff for support should he request or be in need of mental health services. Unit staff are aware of the referral process. This inmate will be seen on an as needed basis or monthly for SHU reviews.

Completed by Ibrahim, Salman PhD on 03/05/2025 12:24

## Medical Concerns

A review of BEMR indicated that Mr. Aziz is currently diagnosed with diabetes, vitamin D deficiency, tinea unguium, tinea pedis, and tinea cruris, for which he is being treated medically.

## Current Problem

Mr. Aziz was initially referred to Psychology Services by East SHU staff for the following reason: He was moved for recreation and then stated that he was feeling suicidal. This writer advised East SHU staff to maintain constant visual observation of Mr. Aziz on the recreation deck until this writer's arrival. Upon this writer's arrival, East SHU staff advised this writer that yesterday, Mr. Aziz received a 100-code incident report for the homicide that he was allegedly involved in. They stated that upon his move for recreation, he reported feeling suicidal. This writer met with Mr. Aziz in the East SHU recreation deck to maximize his privacy from other AICs. During the SRA, Mr. Aziz reported feeling suicidal, describing several frustrations with the current conditions of his confinement. He shared that he received an incident report for killing yesterday, noting that it is unfair for him to receive such by the institution, when "the federal government hasn't decided if they're charging me yet." He described feeling like staff are purposefully retaliating against him and treating him as though he's already been convicted of homicide. He cited a fear that staff are manipulating his food. He described feeling frustrated that a chaplain still has not met with him yet. He reported that he is still waiting to meet with the SIA regarding his complaints. He expressed a belief that staff purposefully threw his property away the last time he was placed on Suicide Watch, citing a belief that staff are trying to prevent him from working on his legal cases, as his legal transcripts were lost in his property that has gone missing. Mr. Aziz shared that he feels hopeless to the point that he would rather take his own life than let staff end his life. When asked about his children, which he has previously identified as his reasons for living, he stated that he feels like he let them down because he put himself in this situation and now may never see them again. He also indicated that he has not been praying regularly lately because he does not feel connected with his Muslim faith. He cited a desire to increase his hope and find reasons to continue living. At the time of this SRA, he reported feeling currently suicidal with the intention to die if given the means to do so. Mr. Aziz presented with difficulty accessing healthy distress tolerance skills and a lack of hopefulness. At this time, he was unable to identify any reasons for living and continued to endorse current suicidality. This writer provided several psychological interventions for Mr. Aziz, including validation, active listening, and maintenance of rapport. Healthy ways to regulate his negative emotions and cope with his stressors were discussed. Mr. Aziz was somewhat receptive to psychological interventions at this time, but he continued to express difficulty accessing any healthy distress tolerance skills or an ability to navigate stressful situations at the time of this SRA. As such, placement on Suicide Watch is clinically appropriate at this time. Chief Psychologist consulted.

## Current Mental Status

**Level of Consciousness:** Alert and Oriented

**Psychomotor Activity:** Normal

**General Appearance:** Normal

**Behavior:** Cooperative

**Mood:** Sad/depressed

**Thought Process:** Goal Directed

**Thought Content:** Normal

Current Mental Status: Mr. Aziz was alert and oriented. He was polite, calm, and cooperative in demeanor. He exhibited a sad/depressed mood with congruent affect. Eye contact and hygiene were appropriate throughout. He spoke with normal rate, tone, and volume. His thoughts were organized and coherent, with no loosening of associations or tangential, circumstantial, or irrelevant content. There was no evidence of perceptual disturbance, delusional ideation, or a formal thought disorder. He did not engage in any bizarre or inappropriate behavior.

## Risk and Protective Factors Assessed

**This writer screened the inmate for a variety of empirically validated factors commonly associated with risk for self-harm and suicide.**

The following **STATIC** risk factors were assessed to be present and increase the inmate's risk for engaging in suicide related behaviors: Chronic Medical Condition, History of childhood abuse (physical or sexual), History of self-injury or suicide attempt, History of violent behavior

The following **DYNAMIC** risk factors were assessed to be present and increase the inmate's risk for engaging in suicide related behaviors: Current suicidal ideation, Current suicidal intention, Fear for own safety, Feeling hopeless/helpless, Social isolation

Exhibit D

The following **PROTECTIVE** factors were assessed to be present and may decrease the inmate's risk of suicide:Adequate problem solving skills, Religious beliefs against suicide, Supportive family relationships, Willingness to engage in treatment

Some risk and/or protective factors were not assessed, and their impact on this inmate's risk for suicide related behavior is undetermined; the reason they were not assessed is stated below.

Mr. Aziz was previously a CARE1-MH AIC that did not meet diagnostic criteria for a mental illness. However, based on his recent increased need for psychological services, he is being increased to CARE2-MH status and diagnosed with Adjustment Disorder: With Mixed Disturbance of Emotions and Conduct. A review of records indicated that he previously reported being the victim of childhood verbal, physical, and emotional abuse. He has been seen for two prior SRAs while in BOP custody, one of which resulted in placement on Suicide Watch. Medically, he is diagnosed with diabetes, vitamin D deficiency, tinea unguium, tinea pedis, and tinea cruris. He has one incident report for possession of a hazardous tool, and he is also currently pending investigation for an alleged homicide of another AIC at MDC-Brooklyn.

Mr. Aziz reported feeling currently suicidal to East SHU staff earlier this morning. During the SRA, he reported feeling suicidal, describing several frustrations with the current conditions of his confinement, as well as a fear for his life in East SHU. He shared that he received an incident report for killing yesterday, noting that it is unfair for him to receive such by the institution, when "the federal government hasn't decided if they're charging me yet." He described feeling like staff are purposefully retaliating against him and treating him as though he's already been convicted of homicide. He cited a fear that staff are manipulating his food. He described feeling frustrated that a chaplain still has not met with him yet. He reported that he is still waiting to meet with the SIA regarding his complaints. He expressed a belief that staff purposefully threw his property away the last time he was on Suicide Watch, citing a belief that staff are trying to prevent him from working on his legal cases, as his legal transcripts were lost in his property that has gone missing. He shared that he feels hopeless to the point that he would rather take his own life than let staff end his life. Currently, he reported feeling suicidal with the intention to die if given the means to do so. He was observed to be hopeless and helpless throughout, and he was tearful at times. As this SRA was prompted by his current SHU placement, SHU placement is a dynamic risk factor. He is currently facing social isolation, as he is housed in the SHU and has been separated from his family and children.

Mr. Aziz has historically identified some protective factors. For example, he previously described having a supportive relationship with his family and 7 children. He previously noted that he identifies with the Muslim faith. When asked about his children during the current contact, he stated that he feels like he let them down because he put himself in this situation and now may never see them again. He also indicated that he has not been praying regularly lately because he does not feel connected with his Muslim faith. However, he asked to take a Quran with him to Suicide Watch, which was authorized. Currently, he described a willingness to engage in future mental health treatment as recommended, citing a desire to increase his hope and find reasons to continue living.

Overall, Mr. Aziz reported suicidal ideation and general feelings of hopelessness without a will to live. He continued to endorse suicidal ideation and intent. He presented with difficulty accessing healthy distress tolerance skills, was unable to identify any reasons for living, and continued to endorse current suicidality. Future interventions will aim to increase his distress tolerance skills, emotion regulation skills, and build his hopefulness for the future. Based on the totality of this information, a formal Suicide Watch is clinically indicated. Chief Psychologist consulted.

## Diagnosis

Adjustment Disorders: With Mixed Disturbance Of Emotions And Conduct, F43.25 - Current

## Conclusions
**The Overall Acute Suicide Risk for this Inmate is:** Moderate
**Overall Chronic Suicide Risk for this Inmate is:** Absent

## Recommendations
1. Mr. Aziz reported feeling currently suicidal to East SHU staff earlier this morning while in the recreation deck area. During the SRA, Mr. Aziz reported feeling suicidal, describing several frustrations with the current conditions of his confinement. He shared that he received an incident report for killing yesterday, noting that it is unfair for him to receive such by the institution, when "the federal government hasn't decided if they're charging me yet." He described feeling like staff are purposefully retaliating against him and treating him as though he's already been convicted of homicide. He cited a fear that staff are manipulating his food, preventing him from working on his legal cases, and purposefully not meeting with him despite him requesting services from multiple departments. Mr. Aziz shared that he feels hopeless to the point that he would rather take his own life than let staff end his life. He was somewhat engaged with psychological interventions at this time, but he did not demonstrate the ability to access healthy coping mechanisms or identify significant protective factors at this time. Based on the totality of this information, a formal Suicide Watch is clinically indicated. Chief Psychologist consulted.

2. The Mental Health Care Level (MHCL) and Diagnostic and Care Level Formulation (DCLF) note of Mr. Aziz were reviewed.

# Bureau of Prisons
# Psychology Services
## Sexual Abuse Intervention (V)

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | AZIZ, JAMAUL KAREEM | | | Reg #: | 24716-509 |
| Date of Birth: | 04/11/1980 | Sex: | M   Facility: BRO | Unit Team: | 4 DETC M/W |
| Date: | 04/18/2025 13:56 | Provider: | Steinhaus, G. PsyD | | |

Alleged Perpetrator:   BOP Staff

## Comments

**REASON FOR REFERRAL:**
Psychology Services was notified at 12:47 PM on April 18, 2025, by the Special Housing Unit Lieutenant that Mr. AZIZ reportedly made a PREA allegation against staff. Specifically, per the Lieutenant, the PREA Compliance Manager advised the Special Housing Unit Lieutenant that approximately 20 minutes earlier, Mr. AZIZ made a PREA allegation against staff during the PREA Compliance Manager's rounds and to make notifications pertaining to such.

While the institution PREA Compliance Manager has yet to determine whether a full PREA protocol will be implemented, this contact and note are being completed in an abundance of caution and to respond to this individual's report given that sexual abusiveness MAY have occurred.

**DATE AND TIME OF CONTACT:**
Mr. AZIZ was seen at approximately 1:50 PM on April 18, 2025, though this clinician was waiting to meet with him beginning at approximately 1:10 PM as Mr. AZIZ had to be removed from his cell and the Special Housing Unit Lieutenant requested to meet with him first. He was seen privately by this clinician and a Health Services provider.

**ASSESSMENT/INTERVENTION RATIONALE:**
As required by P5324.XX, Sexually Abuse Behavior Prevention and Intervention policy, within 24 hours of notification, Mr. AZIZ was evaluated and provided crisis intervention by this writer who has received victim advocate training provided by the Central Office Psychology Services Branch. Mr. AZIZ was informed of confidentiality issues, and permission was provided by the inmate to share any/all details with relevant staff.

**DESCRIPTION OF INCIDENT:**
Mr. AZIZ reported on three occasions, an officer in the Special Housing Unit (hereafter referred to as "Officer ABC") was "essentially grabbing" Mr. AZIZ's buttocks during escort. He specified this occurred approximately one month ago, approximately two weeks ago, and last week when Mr. AZIZ went to the Law Library. Mr. AZIZ indicated that during escort, Officer ABC was "leaning his hands" against Mr. AZIZ's buttocks while having his hand near Mr. AZIZ's hand restraints. He further reported that Officer ABC "wants to always pat [him] down," and that his genitals have been touched in the process. Mr. AZIZ did not report any penetration, but indicated Officer ABC made statements to Mr. AZIZ such as "Yo you want me to do it again?," "Fuck your religion," and making a joke that he will "rape [Mr. AZIZ]." He stated he is concerned of retaliation, noting that is why he waited so long to report these allegations.

**CRISIS INTERVENTION:**
Immediate crisis intervention services were provided via this contact with Mr. AZIZ. Coping mechanisms to manage the impacts of these reported allegations were explored. Mr. AZIZ was conjunctively seen by Health Services, presumably for an Injury Assessment.

**HISTORY OF PSYCHOLOGICAL/PSYCHIATRIC TREATMENT:**
Per this clinician's September 2024 Suicide Risk Assessment, and updated as needed: Records indicate Mr. AZIZ has historically denied a history of mental illness and mental health treatment. He was classified as CARE2-MH in September 2024 in accordance with Central Office guidance, as Mr. AZIZ was seen for three Suicide Risk Assessments within 12 months at that time. He was diagnosed with Adjustment Disorder, With Mixed Disturbance of Emotions and Conduct at that time. Recent CARE2-MH contacts have addressed his reported feelings of hopelessness and frustration about his long-term Special Housing Unit placement/the impacts of such, adaptive means of managing his time, his fasting for Ramadan while in the Special Housing Uni/his religious beliefs, his perceived issues with staff and his needs not being met, cognitive restructuring, interpersonal effectiveness, and his engagement in monthly contacts.

A review of PDS reflects Mr. AZIZ has been seen for four Suicide Risk Assessments (SRA's), two of which resulted in his placement on Suicide Watch. His first SRA (July 2024) was conducted in an abundance of caution after Mr. AZIZ was observed on video footage being involved in an incident on his housing unit that resulted in the death of another AIC. Mr. AZIZ was seen for two SRA's in September 2024, the first of which occurred after he provided a suicide note to staff, and when meeting with a psychologist, advised he ingested more of his medication than prescribed due to how staff treat him and his frustration with his cellmate. His third SRA was precipitated by him verbally endorsing suicidality

Exhibit E

to staff, which he attributed to his frustration with the conditions of his confinement and how staff treat him. Most recently, Mr. AZIZ was seen for a fourth SRA after he wrote a copout endorsing suicidality and that his property was taken away. While meeting with him, he denied current suicidality, noting he said such to be seen immediately to report his safety concerns.

## HISTORY OF SEXUAL ABUSE/PERPETRATION:
Mr. AZIZ previously denied a history of sexual abuse victimization, and records are absent any evidence to suggest historical sexual abuse perpetration.

## EVALUATION RESULTS:

CURRENT MENTAL STATUS: Mr. AZIZ was neatly dressed and appeared hygienic. He was oriented to person, place, time, and circumstances. His affect and mood were appropriate and congruent. His rate, rhythm, and tone of speech were normal, as was his eye contact. There was no evidence of hallucinations, delusions, or abnormal thought processes. No psychomotor agitation/retardation was noted. Mr. AZIZ denied current suicidality.

## VICTIM ADVOCACY:
Mr. AZIZ was reminded of the availability of the rape crisis center victim advocate and that victim advocacy could be also provided by institution Psychology Services staff. Mr. AZIZ endorsed an interest in the former.

## ASSESSMENT OF TREATMENT OPTIONS
Mr. AZIZ did not display mental health symptoms related to the instant allegation, but indicated it has impacted him mentally. Supportive counseling was provided, and as previously mentioned, coping mechanisms were explored. He will continue to be seen monthly as a CARE2-MH inmate, at which point the impacts of these allegations can again be addressed.

## RECOMENDATIONS FOR FOLLOW-UP:
The Special Housing Unit Lieutenant, Captain, Warden, and PREA Compliance Manager have been made aware of this incident. This writer consulted with the Acting Chief Psychologist.

Completed by Steinhaus, G. PsyD on 04/18/2025 14:54

The last note on the topic of a stab wound was that it was healed.  He is already on the list to be seen by the nurse.  I will notify dental however if he is not in acute distress, he will have to wait for the national wait list to reach his name. I am unable to address his non-medical complaints.

Exhibit F

### METROPOLITAN DETENTION CENTER, BROOKLYN
### ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

### -- INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE: With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you MUST attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally.  -

Date form issued and initials of Correctional Counselor:_____

INMATE'S COMMENTS:

1. Complaint:
The Medical department have not responded to my stabs wound I write a cope out to no avail my thumb has felt dislocated also my left shoulder I have received no assistance, it's like pulling hair to get a response I have also been here for nearly 2 years and have seen no dentist also my stomach was in pain from the molded food and nothing, no response no treatment no nothing. I don't understand by there time they will respond I will probably be dead please help.

2. Efforts made by you to informally resolve:
I spoke to nurse Garcia, I wrote cope outs, nothing happens.

3. Names of staff you contacted/Date you contacted the staff:
Mrs Garcia and Ellery C.o. in East shu

Date returned to Correctional Counselor:___8/30/24_____

Jamaul Aziz          24716504          8-25-24
Inmate's Name                Register Number        Date

CORRECTIONAL COUNSELOR'S COMMENTS:
1. Efforts made to informally resolve and staff contacted:
___BP8 sent to Medical. Attached note was Medical
___response

Date informally resolved:__8/31/24___     Counselor Signature:_____
Date BP-229(13) Issued:_____     Unit Manager:_____

Exhibit G

**METROPOLITAN DETENTION CENTER, BROOKLYN**
**ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES**

**INFORMAL RESOLUTION FORM (BP-8)**

NOTE TO INMATE: With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you MUST attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Correctional Counselor:_____

INMATE'S COMMENTS:

1. Complaint:
I have Filed several BP8's and BP9's and my unit team 6B 43 on the 4th Floor has d.d nothing to return my Answers which it's been way pass the 5 days or Rather weeks to get any answers, Mrs Gilfred, Mrs Jenkins dont do Rounds if they do they dont stop to Check on my needs, They Go weeks or months without showing up unless I catch a ticket they show up, I spoke to demo once in a month Time Im not getting any true Assistance with my complaints and dont even know if they submitted my issues other counslors or other Floors been Helping me and it's not their Job to do so Please Fix. I need to see my unit team more consistantly like the west side see them

2. Efforts made by you to informally resolve:
I spoke to demo who runs the staff as there still no show nothing no return of my complaints nothing

3. Names of staff you contacted/Date you contacted the staff:
Mr. demo, MR Singh, LT Bullock I dont remember the date last week

Date returned to Correctional Counselor:_____

Jamaal Aziz                24714504          10-23-24
Inmate's Name              Register Number        Date

CORRECTIONAL COUNSELOR'S COMMENTS:
1. Efforts made to informally resolve and staff contacted:

_____
_____
_____
_____
_____

Date informally resolved:_____    Counselor Signature:_____
Date BP-229(13) Issued:_____    Unit Manager:_____

Exhibit H

## INFORMAL RESOLUTION FORM (BP-8)

The Administrative Remedy Program allows you the opportunity to have an issue related to your incarceration formally reviewed. You have the responsibility to use this program in good faith and in a straightforward manner. You should make every effort to honestly attempt to informally resolve this matter verbally with staff.

Date BP-8 issued to Inmate: _7/31/25_

Correctional Counselor Initials: _OR_

INMATE NAME: _Samaul Aziz_

REGISTER NUMBER: _24716509_ UNIT _West 5+4U._

Specific Issue Needing Resolution: _I need Transparency copies of my Documents instead of Just throwing things away in the garbage!_

Explain the issue in detail: _I have been submitting BpA to my counslurs and been receiving No copies of my BpA's. also if I'm dealing with the same department my arguments are not being put in the system via Mrs Gillbfried. I_

INMATE SIGNATURE _Samaul Aziz_ DATE _8·5·25_

### TO BE COMPLETED BY CORRECTIONAL COUNSELOR

Date Received from inmate: _8/8/25._

Action Taken: _This Has Been addressed._

CORRECTIONAL COUNSELOR SIGNATURE _BA - CSW_ DATE _8/11/25_

### TO BE COMPLETED BY UNIT MANAGER
#### Informal Resolution Reviewed

UNIT MANAGER SIGNATURE _____ DATE _____

DATE BP-9 ISSUED TO INMATE _____ STAFF INITIALS_____

ExhibA I

# METROPOLITAN DETENTION CENTER, BROOKLYN
## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

*Emailed to Facilities 08/23*

### INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE: With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you MUST attempt to informally resolve your complaint through your correctional counselor. Additionally, <u>in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner.</u> Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state <u>ONE</u> complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Correctional Counselor: BA 8/16/24.

### INMATE'S COMMENTS:

1. Complaint: 8-14-24 I digested brown infested water from the water in the East Shu sink, I'm Relegious and use water to pray 5 Times a day and also put water in my mouth a few Times before noticing that the water was Toxic, there were no warning or alert or bottle drinking water to substute the damage water, This persisted into 8-15-24, Fbop didn't supply the East Shu with any other alternative. ~~strikethrough~~ Why wasn't we informed or giving bottle water.

2. Efforts made by you to informally resolve:
I Asked For Bottle Water and was not giving any.

3. Names of staff you contacted/Date you contacted the staff:
Mrs Jones, Mr Reed Co. Cook

Date returned to Correctional Counselor: _____

Janaul Aziz     24716509     8-16-24
Inmate's Name      Register Number     Date

### CORRECTIONAL COUNSELOR'S COMMENTS:
1. Efforts made to informally resolve and staff contacted:

_____
_____
_____
_____
_____

Date informally resolved:_____    Counselor Signature:_____
Date BP-229(13) Issued:_____    Unit Manager:_____



Exhibit J

## METROPOLITAN DETENTION CENTER, BROOKLYN
## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

### INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE: With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you MUST attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Correctional Counselor:_____

INMATE'S COMMENTS:

1. Complaint:
The East side showers are full of mild and water molded and dirt dripping from the ceilings in shower, Also the showers are always clogged to water fills up over your feet giving my feet bacteria infections between my toes and nails which is creating a fungus due to the deplorable shower conditions. These showers are not fit for Humans to take showers in uncomfortable scared of metal, Also the rooms are blowy cold air in the winter, making everybody sick No heat is coming out the vents C.O. are wearing coats and hoodies down here and we are forced to sit here freezing in the bare minimum please give extra blankets Thermals or something.

2. Efforts made by you to informally resolve:
I spoke to a few LT staff CO. they say they cant give out extra blankets or thermals until the end of Nov and that it's the orderly Job to clean the years or build up hold

3. Names of staff you contacted/Date you contacted the staff:
Mr. Garcia, Mr. Neel, Mrs. dones, Mrs Graham L.T. Ferguson LT Lewis TO No Avail

Date returned to Correctional Counselor:_____

Jamaul Aziz                    24716579         10-29-24
Inmate's Name                  Register Number   Date

CORRECTIONAL COUNSELOR'S COMMENTS:
1. Efforts made to informally resolve and staff contacted:

_____
_____
_____
_____
_____

Date informally resolved:_____  Counselor Signature:_____
Date BP-229(13) Issued:_____   Unit Manager:_____

Exhibit K

# METROPOLITAN DETENTION CENTER, BROOKLYN
## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

### INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE: With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you MUST attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Correctional Counselor:_____

INMATE'S COMMENTS:

1. Complaint:
I have constantly have to eat cold food everyday thou I complained to AW Richardson C.O Bedford, CO. Cook on July 19 to Aug 24 The food is always Cold unreetable and uncooked at times French Fries taste Frozen food Icy cold I will like Hot meals This don't make No sense. I have Found hair in my cereal and Food at times, it was spit in one of my trays this is inhumane disgusting Treatment.

2. Efforts made by you to informally resolve:
I spoke to Richardson C.O. bedford C.O. cook C.O heed C.O dove The whole East shift, I wrote op cells to resolve as well

3. Names of staff you contacted/Date you contacted the staff:
AW Richardson Aw maldondo c.o bedfrd C.o Cook co. heed c.o dove

Date returned to Correctional Counselor:_____

Jamaul Aziz        24716529        8-24-24
Inmate's Name          Register Number        Date

CORRECTIONAL COUNSELOR'S COMMENTS:
1. Efforts made to informally resolve and staff contacted:
_____
_____
_____
_____
_____

Date informally resolved:_____    Counselor Signature:_____
Date BP-229(13) Issued:_____    Unit Manager:_____

Exhibit L

## METROPOLITAN DETENTION CENTER, BROOKLYN
## ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES

### INFORMAL RESOLUTION FORM (BP-8)

NOTE TO INMATE: With the exception of sensitive issues and DHO appeals, you are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-229(13) (old BP-9), you MUST attempt to informally resolve your complaint through your correctional counselor. Additionally, in accordance with P.S. 1330.13, you have the responsibility to present complaints in good faith and in an honest and straightforward manner. Before completing this form, you should make every effort to honestly attempt to informally resolve this matter verbally with staff. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally.

Date form issued and initials of Correctional Counselor:_____

INMATE'S COMMENTS:

1. Complaint:

I currently Get Kosher meals common fare on 10-20-24 and for multpl months now for Breakfast im receiving 2 small bags of plain cereal with no sugar a cup and a piece of bread that dont meet the requirment of a meal not even close no Jelly or PB to go with the bread or nothing also on 10-23-24 I had experienced in my lunch bag Tomato Juice and peanut butter mayo and musterd like that was a full course meal what do I suppose to make a peanut butter mayo and mustard sandwich then drink Tomato paste After please be serious and fix these are not meals bad enough the food taste outdated and old but now for not even getting a full meal

2. Efforts made by you to informally resolve:

I spoke with East officers Hii Graham, Mr Garcia, Ms Gonzalez to no avail nobody cares to fix these issues L.T Richardson I tried to get them to call the kitchen they refused to change it.

3. Names of staff you contacted/Date you contacted the staff:

10-22-24 Mrs Graham, Mr Gonzalez, Mr Cook. 10-23-24 Mr Garcia and L.T Richardson

Date returned to Correctional Counselor:_____

Samuel Gz                    24716509            10.23.24
Inmate's Name                Register Number      Date

CORRECTIONAL COUNSELOR'S COMMENTS:

1. Efforts made to informally resolve and staff contacted:

_____
_____
_____
_____
_____

Date informally resolved:_____    Counselor Signature:_____
Date BP-229(13) Issued:_____      Unit Manager:_____

Exhibit M

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 11, 2025

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      NORTHEAST REGIONAL OFFICE

TO  : JAMAUL KAREEM AZIZ, 24716-509
      BROOKLYN MDC    UNT: 4 DETC M/W    QTR: Z03-119LAD
      P.O. BOX 329001
      BROOKLYN,  NY 11232

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 1254048-R1       REGIONAL APPEAL
DATE RECEIVED   : SEPTEMBER 8, 2025
SUBJECT 1       : UNPROFESSIONAL, INAPPROPRIATE CONDUCT OR MISCONDUCT BY STAFF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU MUST FIRST FILE A BP-9 REQUEST THROUGH THE INSTITUTION
                 FOR THE WARDEN'S REVIEW AND RESPONSE BEFORE FILING AN APPEAL
                 AT THIS LEVEL.

Exhibit N

U.S. DEPARTMENT OF JUSTICE                    REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Aziz Jammal K            24716509   West Side MDC Brooklyn
      LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.        UNIT        INSTITUTION

Part A- INMATE REQUEST I have submitted several BpA's to my unit team officer mrs Gilbfried and also mrs Alveraz, my BPA's is either not being submitted on a muiltple occassions or not being responded to at all. I have also reach out to regional and submitted Bp9's with no reply. My mail is being tampered with, there not going out or coming in. Somebody in my unit team is throwing out my mail. I also have mrs Alveraz and mrs Gilbfrie who refuse to give me copies of my BPA's for over 13 month's saying it's policy I have a plethora of facility violations that's not being responded to. First & foremost I reported me being stabbed with no alarm button working! I complain about cold food, inhumane treatment, molded food, mold in the showers, staff misconduct and I have presented this to Warden down to AW's LT's and more about my all of these violations to my health to my security my visits & mail with no change or response please address and fix and also assist.

9-2-25                                    _____
   DATE                                    SIGNATURE OF REQUESTER

Part B- RESPONSE

DATE RECEIVED
FEDERAL BUREAU OF PRISONS
OFFICE OF THE REGIONAL COUNSEL

SEP 0 8 2025

NERO - PHILADELPHIA

_____          _____
        DATE                      WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

                                              CASE NUMBER: _____

Part C- RECEIPT

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____          ⊕              _____
        DATE                      PRINTED ON RECYCLED PAPER    RECIPIENT'S SIGNATURE (STAFF MEMBER)    BP-229(13)
                                                                                                        APRIL 1982
USP LVN

FEDERAL BUREAU ~~PRISONS~~
OFFICE OF THE ~~R~~ ~~ICE~~
FEB 2? 2025

NERO - PHILADELPHIA

#24716509
2·12-25

Jamaul Aziz
MDC Brooklyn (WEST SHU)

TO WHOM it may Concern:

I AM a long term shu INMATE according to MDC Brooklyn. I'M not Receiving any sort of EDUCATION, and is being denied this Right to learn and get my G.E.D. To get and Further my education should Not be a privileage or a discipline! I haven't been sentenced as of yet But will soon and this can determine whether I go to a peritentary, medium or law Facility due to my points, in which my G.E.D is 6 points and also will determine what type of Job I can receive to pay Back restitation and also show I can show progress and Be a productive individual. THis is a HUGHE ISSUE, I understand the shu is For diseplinary segeration it's not to hinder people From an education, State Jails has already adopted programs For shu inmates, also more social opportunties which the FBop Full stoet! THis has not Been addressed swiftly, I will ask that this issue please Be resolved as soon as possible, my sentencing is in July! I'm Also in the shu on a suspended ticket and not Being allowed an opportunity to grow my social Communcatio Back, until my outside case is resolved which dosent make sense! THe duplicity in doing or spending nearly 7 months in the shu and then the time you spend before seeing D.HO does not count towards your diesiplence is Eggrecious to say the least every day should count! The shu is not to house people who not are being dicsplined For long term this is mentally cruel! people who were threatning, under investagation, or pending a ticket should not be subjected to the same penalty as some one who is serving DHo time. Also the DHo hearing officer has been truly Bias an impartial and always giving out the max on First time Violators is crazy and she speaks out about leaning towards whatever a officern Rights instead of Conducting a thourough investigation and making a decision based on the Facts I appreciate you look into these matters our and my liFE depends on it thank you! (Exhibit O)   1230903-R1

I Also Filed AN Appeal For a Code. 203 Back IN November to the Regional, I Did everything on time But lacked copies due to my Circumstance Being in the site! I was denied on the technicality that I didn't have the proper copies also stating it was not submitted in it's proper time Frame when in Fact the mailing go out was suFFicent and due to the Region lack OF responding on time they reJected my arguements due to these unsupported Claims causing hurstships to erase a ticket that wasn't done or Dito pass 19 Days and was Impartial and didn't award me my witnesses like requested which was truly unFair and cost me Good time credit a lost of commisary and unnecessary and unwarranted False statements on a ticket please Fix These issues being long term site I have no true advocate but the Region thanks In Advance!

Sincerely,

# 24716509

**III.    Relief:** State what relief you are seeking if you prevail on your complaint.

Injunctive relief requesting that the Court order the plaintiff to be removed from isolation punitive, nominal damages in excess of $75,000.00

I declare under penalty of perjury that on __9-27-25__, I delivered this
(date)
complaint to prison authorities at __MDC Brooklyn__ to be mailed to the United
(name of prison)
States District Court for the Eastern District of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: __9-27-25__

_Jamal Omy_
Signature of Plaintiff

__MDC Brooklyn__
Name of Prison Facility or Address if not incarcerated

__80 29th Street__
__Brooklyn, NY 11232__

Address

__24716-509__
Prisoner ID#

rev. 12/1/2015

Jamaul K. Aziz #24716-509
MDC Brooklyn
J 29th Street
rooklyn, New York 11232




CERTIFIED MAIL

United States District Court
Clerk of Court
225 Cadman Plz
Brooklyn, NY 11201

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   OCT 14 2025   ★

BROOKLYN OFFICE





METROPOLITAN DETENTION CENTER
80 29TH ST, BROOKLYN, NY 11232
The enclosed letter was processed through
mail procedures for forwarding to you.
The letter has neither been opened nor inspected.
If the writer raises a question or a problem over
which this facility has jurisdiction, you may wish
to return the material for further information
or clarification. If the writer encloses correspondence for
for forwarding to another addressee, please
return the enclosure to the above address.

LEGAL MAiL

10/31 PS NO Certified 2nd posture of receipt present